Filed 8/10/22 P. v. Hidalgo CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075992 |
| v. | (Super.Ct.No. FVI20000041) |
| ANTHONY MICHAEL HIDALGO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Tony Raphael, Judge. Affirmed.

Kevin J. Lindsley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Christine Y. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

Anthony Hidalgo appeals his conviction for car theft, arguing the prosecution presented insufficient evidence that he acted as an accomplice in helping his friends commit the crime. He also argues that: (1) two of the jury instructions prejudicially impeded his alibi defense; (2) the trial judge violated his due process rights as articulated in *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*) by failing to hold an ability-to-pay hearing before imposing a $300 restitution fine and $70 in assessment fees, and (3) a recent amendment to felony sentencing laws requires us to remand for resentencing. We conclude each of Hidalgo's arguments lacks merit and affirm.

# I

## FACTS

Sometime between the late evening of November 19, 2019 and the early morning of the following day, the victim was beaten and bound with an extension cord while his assailants stole various items from his home and took his car. Over the course of the investigation and at trial, the victim gave a number of accounts that conflicted on certain details, including the precise time the home invasion took place. Hidalgo's defense at trial was that he couldn't have been one of the assailants because he was in police custody for nearly 12 hours on November 20, 2019—from about 3:45 a.m. to about 3:00 p.m.

A.     *Prosecution's Case*

The victim, who is 5'7" and in his 60s, lives in Hesperia with his wife and son, neither of whom was home when the incident occurred. The victim was acquainted with

2

Hidalgo (who is in his 30s) through his daughter, Rachel, and had spent time with him on a few previous occasions. On November 19, Hidalgo stopped by the victim's house to hang out and asked if he could invite his friends over—two people later identified as Jason Boggs and Cara Anderson. The four hung out and drank beers for some time, but the details of what happened next vary with the victim's telling.

According to the victim's daughter Rachel, who testified at trial, her father called her "in the middle of the night," crying and shaken up, saying he had just been tied up and robbed. She rushed over to her father's house, where he told her that Hidalgo and another man and woman had tied him up, blindfolded him, and taken his personal property and car. She urged him to call the police, but he didn't want to because he was scared, so she ended up reporting the crime.

A Riverside County deputy interviewed the victim on November 21, 2019. He told the jury the victim had visible injuries, appeared a little confused, and had some difficulty remembering the incident. He said the victim told him he had been hanging out with Hidalgo that evening when Hidalgo had invited Boggs and Anderson over. He said Hidalgo left shortly after the couple arrived, probably sometime around 10:00 p.m., and he (the victim) stayed up drinking and smoking marijuana with the couple for a few hours before passing out from intoxication. He woke up in his kitchen at about 4:00 or 5:00 a.m. and heard voices behind him. Whoever was in his house tied him up and ransacked his home for about two hours. He told the deputy he didn't get a look at his assailants.

3

Several months later, in February 2020, the victim filed a claim with his insurance company for the stolen property. In his sworn statement he said he had been robbed at approximately 4:00 a.m. on November 20, 2019 by "three males and a female." He said when he answered the front door, the group pushed their way in, tied him up with an extension cord, threw him down on the kitchen floor, and robbed him.

At trial, the victim said he didn't know why he had written there were three males because there were only two—Hidalgo and Boggs. He said he had drunk beers and smoked cigarettes with Hidalgo, Boggs, and Anderson until 11:00 p.m., when everyone left his house. He denied being intoxicated and said he went to sleep in his bedroom. The sound of his doorbell woke him up, and he recalled looking at his bedside clock and seeing it was around 4:00 a.m. When he answered the door, Hidalgo and Boggs forced their way inside and pushed him into the kitchen. They punched and kicked him, and Hidalgo said he was "sorry about this" as they tied him up with an extension cord and put a hood over his head. They took the keys to his car and his safes from where he kept them on his belt. For what seemed like a couple of hours, the victim could hear movement around his house, then he heard his garage door open and close a few times.

When the house became silent and he believed the group had left, he untied himself, surveyed the damage to his house and saw that his car, a 2003 Mitsubishi Lancer, was missing. After a few hours, he called his son and daughter and told them what happened.

4

The prosecution showed the jury photos the police had taken of the victim's injuries and his house after the incident. In addition to his car being stolen, several of his safes had been opened and his coin collection and other memorabilia had been taken.

A few weeks after the incident, Anderson was caught in Fontana driving the victim's car. Aside from a few coins from the victim's collection found inside the car, his stolen personal property was never recovered.

When asked whether the details of his account would change if he learned Hidalgo had an alibi beginning around 4:00 a.m. on November 20, the victim said his memory of the timing could be mistaken. He said he'd been groggy when he answered the door but was certain Hidalgo was one of the attackers.

B.      *The Defense*

The defense recalled the investigating deputy, who confirmed he was unaware of any DNA or fingerprint evidence collected from the crime scene implicating Hidalgo. The defense also presented evidence that Hidalgo had been pulled over for a traffic stop one town over, in Apple Valley, at 3:40 a.m. on November 20, 2019. Hidalgo was driving a car registered to Boggs. Inside, the police found syringes but no property belonging to the victim. Hidalgo was arrested for driving without a license and possession of drug paraphernalia. He was taken to Adelanto Detention Center where he spent several hours until his release later that afternoon, around 3:00 p.m.

5

C. *Instructions*, *Closing Arguments, and the Verdict*

The prosecution tried Hidalgo as a direct perpetrator of first degree robbery (Pen. Code, § 211) and as an accomplice to car theft (Veh. Code, § 10851, subd. (a)). The trial judge, Riverside Superior Court Judge Tony Raphael, instructed the jury on the differences between the two kinds of liability, explaining among other things that accomplice liability, unlike direct liability, does not require the defendant to be present when the crime is committed. (CALCRIM No. 3400.) The trial court also instructed the jury that the prosecution was not required to prove the crimes took place exactly on November 20, 2019, "but only that [they] happened reasonably close to that day." (CALCRIM No. 207.)

During closing arguments, the prosecutor argued that Hidalgo had been the group's ringleader, hatching the robbery plan when he realized the victim was alone in his home, then enlisting the help of his two friends. The prosecutor argued the group had robbed the victim together, then Hidalgo left in Boggs' car so that Boggs and Anderson could steal the victim's car. He told the jury that even though Boggs and Anderson had been the ones to take the car, Hidalgo had acted as an accomplice by helping to "violently force" the victim "into his kitchen where they tied him up" and by driving off in Boggs' car so that Boggs and Anderson could take the victim's. The prosecutor added, "we know that . . . [Boggs and Anderson] left in the Mitsubishi Lancer belonging to [the victim], but it was Mr. Hidalgo that was aiding and abetting during the course of the robbery."

6

Defense counsel argued this was a case of mistaken identity—that Hidalgo was not with Boggs and Anderson when they robbed the victim and stole his car, as proven by the fact he was in custody during the time the victim said the incident occurred.

The jury found Hidalgo not guilty of robbery but guilty of aiding and abetting the car theft. In a separate bench trial, the judge found he had suffered a prior serious violent felony conviction and sentenced him to six years in prison—the upper term of three years for the theft, doubled under the "Three Strikes" law because of the prior strike. (Pen. Code, §§ 1170.12, subds. (a)-(d), 667, subd. (b).)

## II

## ANALYSIS

### A.    *The Car Theft Conviction*

Hidalgo argues his car theft conviction isn't supported by the record because the prosecution premised his guilt on his having committed the robbery, but the jury found him not guilty of that crime. According to Hidalgo, because the prosecutor argued during closing that Hidalgo aided and abetted the car theft "during the course of the robbery" and the jury acquitted him on the robbery count, "there was no evidence that he aided and abetted the [car] theft." We disagree.

When considering a challenge to the sufficiency of the evidence to support a conviction, we must review "the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable jury could find the defendant guilty beyond a reasonable doubt."

7

(*People v. Rountree* (2013) 56 Cal.4th 823, 852-853.) Because we are reviewing a paper record whereas the jurors watched each witness testify, we do not reweigh the evidence. (*Ibid.*) Instead, we "presume[] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence" and will not reverse unless there is no hypothesis under which a reasonable jury could find the defendant guilty. (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 626.)

An accomplice to a crime (or an aider and abettor) is a person who, "'acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense; (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime.'" (*People v. Prettyman* (1996) 14 Cal.4th 248, 259.) Factors relevant to determining whether someone has acted as an accomplice include the person's presence at the scene of the crime, their relationship with the codefendants, and their conduct before and after the offense. (*People v. Campbell* (1994) 25 Cal.App.4th 402, 409.)

Here, the trial record contains sufficient evidence to permit a reasonable jury to find Hidalgo guilty as an accomplice in the theft of the victim's car. While some aspects of the victim's account varied, he never wavered in his certainty that Hidalgo had been the one to come over first, invite Boggs and Anderson over to the victim's house, and later to tie him up with an extension cord. Though he told the deputy shortly after the incident that he didn't see who his attackers were, the jury could reasonably conclude he wasn't reporting the entire incident out of fear, considering that his daughter testified he

8

had identified Hidalgo as one of his attackers immediately after the incident, was scared, and didn't want to talk to the police. The acts the victim ascribed to Hidalgo with certainty during trial—inviting Boggs and Anderson over and tying him up—coupled with the fact he had driven off in Boggs' car (as evidenced by his early morning arrest), reasonably support an inference that he knew his friends intended to steal the victim's car and intentionally helped them do so.

Hidalgo's focus on the fact the jury acquitted him of the robbery charge is misplaced. During closing argument, the prosecutor argued that Hidalgo aided and abetted the car theft "*during the course of* the robbery" by tying up the victim and thereby preventing his resistance. (Italics added.) This argument did not require the jury to find Hidalgo guilty of robbery as a prerequisite to convicting him of aiding and abetting the car theft. The reason being that the prosecution tried the two counts under different theories of liability. To convict Hidalgo of robbery the jury had to find he was a direct perpetrator of the crime; whereas, to convict him of car theft they need only find he was an accomplice to the crime.

The prosecution's theories of liability thus permitted the jury to find that while Hidalgo had *taken part* in both offenses, he could be *convicted* of only one—the one for which he was tried as an accomplice. For instance, the jury could reasonably find Hidalgo had tied up the victim—an act that no doubt facilitated the robbery—while also reasonably concluding he was not a direct perpetrator of the robbery because he didn't take any of the victim's personal property. This conclusion is supported by the fact that

9

Hidalgo was not in possession of any of the victim's belongings when he was arrested in Boggs' car. In short, the evidence presented at trial permitted the jury to find that Hidalgo participated in and facilitated both the robbery and the car theft, but, because of the nature of the charges, was guilty of the car theft only.

B.   *CALCRIM Nos. 3400 and 207*

Hidalgo argues the trial judge erred by instructing the jury with CALCRIM Nos. 3400 and 207 because they weren't supported by the record and impeded his ability to present his alibi defense. We review claims of instructional error de novo. (*People v. Cole* (2004) 33 Cal.4th 1158.) "The proper test for judging the adequacy of instructions is to decide whether the trial court 'fully and fairly instructed on the applicable law.'" (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1111.)

Although a trial judge has a sua sponte duty to instruct the jury on "all general principles of law relevant to the issues raised by the evidence" (*People v. Souza* (2012) 54 Cal.4th 90, 115), it is "error to give an instruction which, while correctly stating a principle of law, has no application to the facts of the case" (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129). The general principles of law governing the case are "'those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.'" (*People v. Breverman* (1998) 19 Cal.4th 142, 154.) Instructing the jury "as to an issue not predicated upon some theory *logically deducible from the evidence*" is error because the instruction "presents for

consideration a question not properly determinable by them." (*People v. Eggers* (1947) 30 Cal.2d 676, 687.)

We start with CALCRIM No. 3400, which informed the jury that they need not find Hidalgo was present when the car theft was committed to be guilty as an accomplice. Though this is a correct statement of accomplice liability, Hidalgo argues it was error to give the instruction because it wasn't supported by the record. According to Hidalgo, the prosecution's theory of accomplice liability *required him to be present* during the car theft because they argued he facilitated the crime by committing the robbery.

This argument suffers the same flaw as the previous one: Hidalgo is over interpreting the prosecution's theory of accomplice liability. As we've explained, Hidalgo's act of tying up the victim (thereby immobilizing him and preventing his resistance) is enough to aid and abet the car theft; the jury didn't also have to find that he personally took any of Hidalgo's property. Having concluded the prosecution's theory did not require him to be present during the car theft, we now ask whether the evidence so required and conclude it did not. After the victim was tied up and either hooded or blindfolded, he couldn't see what his assailants were doing. This leaves open the possibility that Hidalgo drove off in Boggs' car while Boggs and Anderson were still ransacking the victim's house—that is, *before* they took his car. As such, the instruction was supported by the evidence and it was not error to provide it.

11

We now turn to CALCRIM No. 207, which advised the jury that the prosecution was not required to prove the crimes took place exactly on November 20, 2019, "but only that [they] happened reasonably close to that day." We conclude Hidalgo forfeited his challenge to this instruction by failing to object to it in the trial court. (*People v. Campbell* (2020) 51 Cal.App.5th 463, 498-499.) But even if we were to reach the merits, we would conclude the challenge fails.

As a general matter, the prosecution is not required to plead the exact time of commission of an alleged offense. (Pen. Code, § 955.) However, when a defendant raises an alibi defense, "the exact time of commission becomes critically relevant to the maintenance of the defense." (*People v. Barney* (1983) 143 Cal.App.3d 490, 497.) Thus, to protect a defendant's constitutional right to present a defense, a trial judge may not provide an instruction like CALCRIM No. 207—which deflects the jury's attention from temporal detail—when "the evidence fixes the commission of the offense at a particular time *to the exclusion of any other time* and the defendant has presented evidence of an alibi as to that particular time." (*People v. Jones* (1973) 9 Cal.3d 546, 557.)

The reason Hidalgo's challenge to CALCRIM No. 207 fails is because the prosecution's evidence did not fix the time of the robbery and the car theft to the period he was in custody. The victim said he thought the home invasion had occurred around 4:00 a.m. on November 20, but he admitted he was groggy when he woke up and his recollection could be wrong. In addition, his daughter said he'd called her earlier, "in the

12

middle of the night," and there was evidence he was still intoxicated when the home invasion occurred.

For all of these reasons, the jury could reasonably conclude the victim's memory of when the robbery took place was compromised and that it could have happened any time between the late evening of November 19 and the early morning of November 20. The fact Hidalgo was pulled over around 3:40 a.m. does not provide a complete alibi for that stretch of time. Because Hidalgo's alibi is a partial one only, we conclude the judge did not err by giving CALCRIM No. 207 and letting the jury decide whether Hidalgo was present for the entire incident, none of it, or just part of it.

Because we conclude neither instruction was erroneous, we reject Hidalgo's claim that the cumulative effect of the instructional errors was prejudicial.

C.     *Dueñas*

At sentencing, the trial judge imposed a $300 restitution fee, a $40 court operations assessment, and a $30 criminal conviction assessment. Despite failing to raise the issue during his sentencing hearing, Hidalgo now relies on *Dueñas* to argue the judge erred by failing to determine whether he could pay the fees before imposing them.

*Dueñas* held that it violates due process under the federal and state Constitutions to impose the court operations and facilities fees without first determining the convicted defendant's ability to pay them. (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1168-1169.) It also held that "to avoid serious constitutional questions" raised by the statutory restitution scheme, the trial judge must stay execution of the mandatory restitution fine unless they

determine the defendant has the ability to pay it. (*Id.* at p. 1172.) In a subsequent decision, the *Dueñas* court held the defendant bears the burden of showing his or her inability to pay, and the court "must consider all relevant factors," including future earnings and "potential prison pay during the period of incarceration to be served by the defendant." (*People v. Castellano* (2019) 33 Cal.App.5th 485, 490-491.)

Since *Dueñas*, some courts have criticized the decision and declined to follow it, while others have concluded the Eighth Amendment's prohibition against excessive fines provides the proper framework for analyzing an ability to pay challenge to fines that are punitive in nature, like restitution. (E.g., *People v. Hicks* (2019) 40 Cal.App.5th 320, 322, 327-329, review granted Nov. 26, 2019, S258946 [holding *Dueñas* was wrongly decided]; *People v. Kopp* (2019) 38 Cal.App.5th 47, 96-97, review granted Nov. 13, 2019, S257844 [holding Eighth Amendment analysis applies to a restitution fine].) Our Supreme Court has granted review of the issues presented by *Dueñas* and will resolve the split of authority. (*Kopp*, review granted, Nov. 13, 2019, S257844.)

The merits of *Dueñas* aside, the problem with Hidalgo's challenge is the threshold one of forfeiture. While we traditionally excuse the failure to object where an objection "would have been futile or wholly unsupported by substantive law then in existence" (*People v. Welch* (1993) 5 Cal.4th 228, 237), Hidalgo cannot argue his failure to object would have been futile because he had the benefit of *Dueñas* when his sentence was imposed. The decision came out well before his sentencing hearing. We therefore conclude his claim of error is forfeited. (See, e.g., *People v. McCullough* (2013) 56

Cal.4th 589, 593 [the failure to object in the trial court forfeits a claim on appeal, even claims based on constitutional rights]; *People v. Keene* (2019) 43 Cal.App.5th 861, 864 ["The concept of forfeiture for failure to raise ability to pay fines, fees or assessments is well established in our case law"].)

But even if he hadn't forfeited his challenge and we were to conclude the judge erred by not first determining his ability to pay the fees, we would nevertheless find the error harmless. This is because the record demonstrates, beyond a reasonable doubt, that Hidalgo will be able to pay the relatively minimal total of less than $400 with future earnings because he is young, healthy, capable of holding a job (as demonstrated by the fact he was gainfully employed for several years before his conviction), and will have an opportunity to earn wages in prison.[1] (See *People v. Jones* (2019) 36 Cal.App.5th 1028, 1035 [*Dueñas* error is harmless if the record demonstrates, beyond a reasonable doubt, the defendant cannot establish their inability to pay].)

D.      *Senate Bill No. 567*

While Hidalgo's appeal was pending, the Governor signed Senate Bill No. 567 (2021–2022 Reg. Sess., Stats. 2021, ch. 731), which made significant changes to section 1170 and became effective on January 1, 2022. Where trial judges formerly had discretion to select any term of imprisonment within the statutory range when sentencing a convicted defendant, the new law makes the middle term the presumptive sentence and

---

[1] According to the probation report, prior to his conviction, Hidalgo had been employed by Labor Finders for eight years, setting up tents for military training and earning $11.00 an hour, and by a company called Parexel, participating in research studies and earning $365 per day.

permits an aggravated sentence only where the defendant has either *stipulated* to the facts underlying the aggravating circumstances or those facts have been *found true beyond a reasonable doubt*. (Stats. 2021, ch. 731, § 1.3; Pen. Code, § 1170, subd. (b)(1)-(2).) There is one exception to this rule, which is that a judge "may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (Pen. Code, § 1170, subd. (b)(3); Stats. 2021, ch. 731, § 1.1)

We allowed the parties to submit supplemental briefing regarding the new law's application to this case. Hidalgo argues the judge selected the upper term for his conviction based on facts that were neither found true by the jury nor stipulated to, and as a result, we must remand for resentencing. The People correctly concede the new law's ameliorative changes apply retroactively to Hidalgo. (See *People v. Flores* (2022) 73 Cal.App.5th 1032, 1039, citing *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 308.) However, they argue the judge's consideration of now improper facts was harmless beyond a reasonable doubt because the judge made clear he would also base his decision to select the upper term based solely on certified court records. We agree with the People.

The list of aggravating circumstances in California Rules of Court, rule 4.421, includes case-specific factors—such as, the vulnerability of the victim, whether the crime involved weapons, great violence, or a high degree of callousness, and whether the defendant induced others to participate in the crime—and defendant-specific factors— such as, whether the defendant has engaged in violent conduct that indicates a serious

16

danger to society, whether they have served a prior prison term, and whether their performance on probation or parole was unsatisfactory. (Cal. Rules of Court, rule 4.421(a) & (b).)

At Hidalgo's sentencing, the judge identified several aggravating circumstances and observed that "any one of [those circumstances] by itself would be sufficient to support the imposition of the aggravated sentencing term." Among the case-specific aggravating circumstances was that the 62-year-old victim was particularly vulnerable and Hidalgo had induced Boggs and Anderson to participate in the crime. The judge also identified defendant-specific aggravating circumstances, including that Hidalgo had engaged in violent conduct that posed a public danger, had served prior prison terms, and had performed unsatisfactorily on parole. These latter circumstances were based on evidence from Hidalgo's certified record of conviction, which the judge had admitted into evidence and relied on during the bifurcated bench trial where he found, beyond a reasonable doubt, that Hidalgo had suffered a prior strike conviction. The records demonstrated Hidalgo had pled guilty to one count of robbery and one count of receiving stolen property in April 2004. They also showed that he had served a prison term for those convictions, was convicted of possessing controlled substances while on parole and returned to custody for the violation, and was released again in 2011. Because these defendant-specific aggravating circumstances were based on the record of conviction, they are a proper basis for the decision to select the upper term under the new law.

17

Citing *People v. Lopez* (2022) 78 Cal.App.5th 459, Hidalgo argues the judge's reliance on proper circumstances doesn't cure the error if the judge *also* relied on improper circumstances in selecting the upper term. To the contrary, *Lopez* underscores why the judge's decision in our case complies with the new law. In that case, the trial judge had relied on now improper circumstances in selecting the upper term as well as circumstances that remained proper because they were based on the record of conviction. The appellate court concluded it could not uphold the sentence based on the judge's consideration of proper circumstances because the judge had "offered no indication that [he] would have selected an upper term sentence even if only a single aggravating factor or some subset of permissible facts were present." (*Lopez, supra*, at p. 468.)

Our case, in contrast, offers precisely such an indication. When identifying the aggravating circumstances the judge explicitly stated that he considered *any one of them* sufficient on its own to support the upper term. Thus, because the record does "clearly indicate that the trial court would have exercised its discretion to impose an upper term based on an aggravating factor" that remains proper under the new law, we conclude Hidalgo's sentence does not violate the recent amendments to Penal Code section 1170. (*Lopez, supra*, 78 Cal.App.5th at p. 468.)

### III

### DISPOSITION

We affirm.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH
J.

We concur:

McKINSTER
Acting P. J.

MENETREZ
J.

19